FILED

NOV 01 2019 sxb

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 19 CR 474 |
| v. | ) |
| | ) Judge Robert M. Dow, Jr. |
| YALE SCHIFF, et.al. | ) |

**DEFENDANT DAVID IZSAK'S REPLY BRIEF
IN SUPPORT OF HIS MOTION TO CONSOLIDATE**

NOW COMES DAVID IZSAK, by and through one of his attorneys, Steven A. Greenberg, replying in support of his motion to consolidate his case with this case as follows:

The indictment against David Izsak, 19 CR 582, and the superseding indictment against Yale Schiff and Jason Schiff, 19 CR 474, are parts of the same story, chapters from the same book. These cases arise from a single investigation, at the same time. The indictments allege identical characters, matching methods, and consistent victims.[1]

David Izsak and Yale Schiff are charged with violating the exact same statutes, 18 U.S.C. 18 U.S.C. §§ 1344 and 1028(a). Jason Schiff is also charged with violations of 18 U.S.C. § 1344. The cases should all have been indicted together. It is alleged as a single, common, conspiracy. While the government has some discretion in how it chooses to indict cases, that discretion should not trump the economies of a single case before the same judge on the same allegations, when those economies also ensure a fair trial for all parties.

---

[1] For purposes of this request Izsak will assume all well plead facts are true.

I.  **The Indictments**

The indictments allege that David Izsak, Yale Schiff and Jason Schiff were, at the same time, executing a common bank fraud scheme against financial institutions and sharing the proceeds of the scheme with each other.

Specifically, the indictments allege that Yale Schiff and Izsak were business associates. *See* Schiff Indictment, 19 CR 474, Dkt. 26 at ¶ 1(g); Izsak Indictment, 19 CR 582, Dkt. 1 at ¶ 1(d). The indictments allege that Yale Schiff and Izsak each used fake identities in his own name. 19 CR 474, Dkt. 26 at ¶ 1(h); 19 CR 582, Dkt. 1 at ¶ 1(e). The indictments allege that the bank fraud schemes involved fake identities in the name of Jeff Kaplan and Sam Rosen. 19 CR 474, Dkt. 26 at ¶ 1(i), (j); 19 CR 582, Dkt. 1 at ¶ 1(f), (g). The indictments allege that the J.G. Stolen Identity was used in the bank fraud schemes. 19 CR 474, Dkt. 26 at ¶ 1(k); 19 CR 582, Dkt. 1 at ¶ 1(i). The indictments allege that "J.G" was known to both Yale Schiff and David Izsak. *Id.* The indictments allege that the L.I. Stolen Identity was used in the bank fraud schemes. 19 CR 474, Dkt. 26 at ¶ 1(l); 19 CR 582, Dkt. 1 at ¶ 1(h). Both indictments allege that "L.I." was Izsak's relative, and the Schiff indictment also alleges that Yale Schiff knew "L.I." *Id.* The indictments each allege a scheme to defraud a financial institution and to obtain money, funds, credits, assets and other property owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, and concealment of material facts. 19 CR 474, Dkt. 26 at ¶ 2; 19 CR 582, Dkt. 1 at ¶ 2. The indictments

2

each allege that the bank fraud scheme began in or around 2005 and continued to in or around 2018. *Id.*

The identical allegations do not end there. The indictments allege that the Schiffs and Izsak fraudulently caused financial institutions to issue mortgage and vehicle loans, lines of credit, and credit card accounts by making materially false representations to, and by concealing material facts from, financial institutions regarding borrowers' qualifications and encumbrances on collateral.[2] 19 CR 474, Dkt. 26 at ¶ 3; 19 CR 582, Dkt. 1 at ¶ 3.

The indictments also allege that the bank fraud schemes involved the same documents—releases of mortgages and liens on real properties and vehicles—falsified in the same manner, filed with the Cook County Recorder of Deeds, for the same purpose and with the same subsequent efforts to conceal the scheme. 19 CR 474, Dkt. 26 at ¶ 4; 19 CR 582, Dkt. 1 at ¶ 4. The indictments allege executions of the bank fraud schemes in an identical manner, *e.g.* "Fraudulently Obtained Mortgage Loans;" "Fraudulently Obtained Vehicle Loans;" "Fraudulently Obtained Credit Card Accounts/Lines of Credit."

While the indictments allege different executions of the bank fraud scheme relating to specific properties, the indictments accuse the Schiffs and Izsak of acting together to further their scheme. Specifically, the Schiff indictment alleges that Izsak shared in the proceeds of the Schiff bank fraud scheme. 19 CR 474, Dkt. 26 at ¶ 16.

---

[2] Izsak's indictment defines "borrowers' qualifications" as "identities, financial condition, and employment. 19 CR 582, Dkt. 1 at ¶ 3. Izsak's indictment also alleges that Izsak caused financial institutions to issue boat loans. *Id.*

Yale Schiff is also alleged to have used David Izsak's likeness on a fake Illinois driver's license that bore the name Sam Rosen. 19 CR 474, Dkt. 26 at ¶¶ 5, 47.

Izsak's indictment alleges that he obtained a $25,000 line of credit from PenFed and that "most of the funds advanced ... were transferred to a checking account controlled by Schiff in the name of the Sam Rosen fake identity[.]" 19 CR 582, Dkt. 1 at ¶ 39 (Izsak is alleged to have used otherwise Schiff to conceal monies.¶37).

Both Yale Schiff and Izsak are alleged to have used the J.G. Stolen Identity to obtain a TD Bank Nordstrom credit card account, which they used for their own benefit. 19 CR 474, Dkt. 26 at ¶ 67; 19 CR 582, Dkt. 1 at ¶ 40. It is alleged Jason Schiff shared some of his proceeds with Yale, Jason, and David (19 CR 474, Dkt. 26 at ¶ 16).

Izsak's forfeiture allegation seeks to forfeit funds in the amount of $100,961.40 seized on or about February 21, 2017, previously held in Citibank account number XXXXX3647, in the name of Premier Assets. 19 CR 582, Dkt. 1 at 25. According to the affidavit in support of the application for the seizure warrant for the $100,961.40, approximately $47,000 in financing was fraudulently obtained from Digital Federal Credit Union for the name of Sam Rosen to purchase a 2015 Lexus. 17 MC 00086, Dkt. 1 at ¶¶ 14, 16. Izsak's indictment does not allege any specific allegations with respect to the loan obtained in connection with the 2015 Lexus. Not surprisingly, those allegations are instead found in the Schiff indictment. *See* 19 CR 474, Dkt. 26 at ¶¶ 47-51. Still, although it is alleged Schiff obtained the fraudulent loan, according

4

the affidavit, approximately $20,000 of those fraudulent funds were used to obtain a cashier's check payable to Premier Assets. Id. at ¶ 19. Izsak's indictment alleges that Izsak was the president and sole officer of Premier Assets, Inc. 19 CR 582, Dkt. 1 at ¶ 1(b).

## II.     Legal Standard

This Court's local criminal rules also allow cases to be reassigned to the calendar of another judge as related if it is found to be related to another case and if it meets the criteria established by Local Rule 40.4(b). N.D. Ill. L.Cr.R. 50.1. This rule provides in the first part that "[t]wo or more criminal cases may be related if all of the defendants named in each of the cases are the same and none of the cases includes defendants not named in any of the other cases." *Id.* This appears to be a reference to new cases, and whether the "related" box ought to be checked on the cover sheet at the time of filing. But the rule continues "A case may be reassigned to the calendar of another judge as related if it is found to be related to another case and it meets the criteria established by LR40.4(b) for reassigning civil cases. The procedures set out in LR40.4(c) and (d) shall be followed where the reassignment of a criminal case based on relatedness is sought." The civil rule, LR 40.4, does not require all common defendants, only common issues, and practical economies, and sets forth the procedure to be followed. There is no corresponding procedural local criminal rule.

In addition, Federal Rule of Criminal Procedure 13 allows the court to "order that separate cases be tried together as though brought in a single indictment or

5

information if all offenses and all defendants could have been joined in a single indictment or information." Fed. R. Crim. P. 13. This rule vests the ability to request a joint trial of separate cases solely with the government or prohibit the defendant from making the request.

Similarly, the Federal Rules of Criminal Procedure do not require that all defendants charged with identical conduct in order to be included in the same indictment. Instead, an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b).

Here, each indictment alleges the same overarching conspiracy. "[T]here is a presumption that participants in a conspiracy or other criminal schemes should be tried together, not only to economize on judicial and prosecutorial resources but also to give the jury a fuller picture of the scheme." *United States v. Cardena*, 842 F.3d 959, 980-81 (7th Cir. 2016) (*quoting United States v. Phillips*, 239 F.3d 829, 838 (7th Cir. 2001)). The prevailing preference is for codefendants to be tried together. *Id.* (*citing United States v. Goodwin*, 496 F.3d 636, 644 (7th Cir. 2007)). "In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *United States v. Carillo*, 435 F.3d 767, 778 (7th Cir. 2006). Although Rule 14(a) of the Federal Rules of Criminal Procedure allows a court to

6

sever codefendants' trials when "consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a), severances are extraordinarily rare. To obtain severance under Rule 14(a), a defendant must show a "serious risk" that a joint trial will "compromise a specific trial right" or "prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Jett*, 908 F.3d 252, 275 (7th Cir. 2018) (*quoting Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

### III. Analysis

Here, no one could claim with a straight face that a motion for joinder is not properly brought. Based on the near-identical allegations in the indictments, there is no doubt that all of the offenses and all of the defendants could have been joined in a single indictment. As is common with indictments that allege bank fraud schemes, each indictment specifies various properties, loans, and transactions as part of the bank fraud scheme. The schemes themselves, however, are fundamentally the same. Neither the Federal Rules of Criminal Procedure nor this Court's local rules require each defendant to be charged in each count of an indictment, so the individual units of prosecution—the transactions specified in each count— are not a bar to joinder. Moreover, Izsak, who is requesting joinder of his case with the instant case, is specifically and repeatedly named in the Schiff indictment and alleged to be a co-schemer. Given the presumption that participants who are alleged to be part of the same criminal scheme should be tried together, this Court should grant Izsak's request to join his case to the instant case as related.

Yale takes no position on this request. The government and Jason Schiff have objected to Izsak's motion for joinder, however, arguing that because Jason Schiff was not named in Izsak's indictment, the cases cannot be related. Such a hyper-technical argument might carry the day if it were not for the reality of the allegations in the Schiff indictment that specifically identify Izsak as part of their scheme. Moreover, that argument puts the dynamics of a trial solely in the hands of the government and takes away any control that this Court may have over the management of cases and the court docket. The rule should not be read so narrowly as to give that sole power to the government, particularly where the government includes Jason Schiff in only three of the fifteen counts of the Superseding Indictment (Counts One, Four, and Five). According to the allegations in the Superseding Indictment, Izsak also was involved in three of the fifteen counts of the Superseding Indictment (Counts One, Eleven, and Fifteen), the government simply chose not to name him specifically in those counts. Jason Schiff also suggests that joinder will cause him prejudice but fails to explain what that prejudice is or how joinder would keep a jury from making a reliable judgment about his guilt or innocence. Izsak respectfully requests that the Court give no weight to such an unsupported assertion.

Plainly, had they been joined from the start, Rule 14(a) would not permit a severance. Fed. R. Crim. P. 14(a). Neither Jason or the government claim joinder would cause a "serious risk" of or "compromise a specific trial right" or "prevent the jury from making a reliable judgment about guilt or innocence." *Jett*, 908 F.3d at 275 (7th Cir. 2018) (*quoting Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

8

Given that joinder of the cases for trial is appropriate under both the local rule and the Federal Rules of Criminal Procedure, joinder of the cases for pre-trial proceedings further ensures efficiency and conservation of judicial resources. Joinder of the cases pretrial ensures that the government provides all relevant discovery relating to the allegations in both indictments to all defendants. Joinder of the cases ensures that each defendant has all relevant information for his defense. Joinder of the cases ensures consistency in legal rulings and factual findings. Joinder of the cases ensures that the same witnesses are not testifying in multiple trials on the same issue. Joinder of the cases ensures that the Court and, potentially, a jury are given a more complete picture of the matters at issue.

WHEREFORE, DAVID IZSAK, requests that the cases be consolidated, and for such further relief as may be appropriate.

Respectfully Submitted,
David Izsak, Defendant

By: _s/Steven A. Greenberg_
One of Defendant's Attorneys

STEVEN A. GREENBERG
GREENBERG TRIAL LAWYERS
53 W. JACKSON, SUITE 1260
CHICAGO, ILLINOIS 60604
(312) 879-9500