UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YALE SCHIFF | No. 19 CR 474-1<br><br>Judge Mary M. Rowland |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM REGARDING YALE SCHIFF'S FRAUD WHILE ON PRETRIAL RELEASE**

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, hereby submits this supplemental sentencing memorandum regarding defendant Yale Schiff's fraud while on Pretrial Release:

**I. BACKGROUND**

On November 20, 2024, the government filed its sentencing memorandum in this case, with 40 exhibits. Docket #264. The memorandum set forth, among other things, that defendant committed fraud while on Pretrial Release. Specifically, defendant used Freight Company A for shipping services in connection with defendant's business, Synergy, and provided Freight Company A with false payment information for those services, leaving an outstanding debt of approximately $670,000. In his sentencing memorandum, defendant claimed that the matter was a "business dispute" and that he was the victim of Freight Company A charging more than initially quoted.

On December 4, 2024, the parties appeared before the Court for sentencing. At that hearing, defendant vigorously contested that he had committed fraud in

1

connection with Freight Company A while on Pretrial Release, and again asserted that it was a business dispute arising out of Freight Company A overcharging him. Defense counsel argued that the Court could not consider the matter for sentencing without "a hearing and due process." Defense counsel knows that is not accurate -- this Court may consider the matter at sentencing based on documents, and even based on hearsay. Nevertheless, the government offered defendant a hearing with witnesses. The Court recessed the sentencing for the defendant to decide if he wanted a hearing.

On December 10, 2024, after the government shared additional incriminating information with defense counsel, defense counsel informed the government and the Court that the defendant waives a hearing. *See* Exhibit 41. However, at defendant's prompting, the government has had an opportunity to obtain and review additional relevant documents and speak with Freight Company A, and has learned that defendant's fraud while on Pretrial Release is even more egregious than that initially set forth in the Government's Sentencing Memorandum. So that this Court can have full information for sentencing, the government now files this Supplemental Sentencing Memorandum.

## II. THE FACTS

### A. Defendant Set Up His Business For Fraud.

Defendant reported to Probation that he works for Synergy Holding Group. PSR ¶126. On August 4, 2022, defendant told the FBI that he is the sole owner and operator of Synergy. Exhibit 36. At sentencing, defense counsel told the Court that

2

Synergy purchases swimming pools from Amazon and resells the pools at a higher markup.

Defendant went out of his way to set up his company in a manner that cloaked his identity. From the beginning, he used multiple company names and multiple aliases to try to insulate himself and his business from Freight Company A and others. Defendant used the names E Distribution and A Distribution, in addition to Synergy, for his business. Exhibit 33. Defendant also used a variety of aliases for himself in connection with his business, including Mark Schiff, Mark Ross, Mark Fields, Brian Fields and Mike. When Freight Company A called the phone number used by Synergy, defendant answered and hid behind aliases, claiming to be other employees such as a shipping employee and an accounts payable employee, and feigning ignorance about outstanding bills to Freight Company A.[1]

Defendant used a phone number ending in 9216 for some time during the course of the offense. *See* Exhibit 42, in which defendant used the name Mark Schiff, his Riverwoods Property address and the 9216 phone number ending in 9216 for a FedEx shipment on July 30, 2020. He continued to use the 9216 phone number in connection with his Synergy business. *See* shipping label attached as Exhibit 43. On February 11, 2020, defendant registered a different phone number, ending in 7678 with the same phone company, Ad Hoc Labs aka Burner; telephone records show that the 7678 phone number is associated with the subscriber for the 9216 phone number, i.e., Yale

---

[1] The government proffers that it has a recorded call in which defendant, hearing it is a representative of Freight Company A calling, pretends to be "Mark from shipping" who knows nothing about any outstanding invoices. The government has tendered it to defense and is prepared to submit it to the Court if the proffer is not accepted.

Schiff. *See* Exhibit 44 (highlighted portions of exhibits were added by the Government). Defendant signed communications with Freight Company A as Marc R, E-Distribution, using the 7678 telephone number. *See* Exhibit 45. Mark Schiff, Mark Ross and Marc R. are all one person ─ Yale Schiff.

If defendant had planned to operate, and had operated, Synergy as a legitimate business, he would not have taken the measures that defendant took to hide his identity and insulate his company. He would not have created the layers and layers of subterfuge. If defendant was operating Synergy legitimately, he would have just operated under the Synergy name, using the name Yale Schiff, with a readily visible email and phone number.

B. **Defendant defrauded Freight Company A while on Pretrial Release**.

Defendant opened his account with Freight Company A in around April 2021, while he was on Pretrial Release. *See* Exhibit 33. Defendant initially opened the account using the name Mike Michael, Manager of A Distribution. *See* Exhibit 46. Defendant used Freight Company A without paying, accumulating approximately $670,000 in unpaid shipping charges, eventually written off by Freight Company A as a loss due to fraud. *See* Exhibit 39. Defendant lulled Freight Company A into continuing to provide shipping services despite no payment by promising payment, and sending fake payment information, including fake checks, fake bank account information and fake check delivery information, to pretend to pay Freight Company

4

A, which allowed defendant to continue to operate his business without paying shipping costs.[2]

### 1. *The Fake Checks*

On or about June 17, 2021, defendant sent by FedEx three checks to Freight Company A as payments for outstanding invoices. *See* Exhibit 47. Each of the checks was dated June 17, 2021, each was printed with the name E Distribution, an address on Lincoln Avenue in Chicago that is actually a UPS Store, and each check is printed with the name of PNC Bank and PNC Bank NA on the top right. Each check bore on the bottom of the check the routing number 071921891, which is the routing number identifying PNC Bank, and the account number 898461020. Specifically: (1) check number 502496 was made payable to Freight Company A for $32,521.98; (2) check number 502497 was made payable to Freight Company A for $39,722.55; and (3) check number 502498 was made payable to Freight Company A for $18,639.51. The signature on each check is illegible, likely on purpose. Each check references a statement number in the memorandum line which is a Freight Company A invoice number; a copy of the invoice stub is at the bottom of each of the check exhibit, directing remittance to Freight Company A at an address on Network Place in

---

[2] Defendant submitted tax returns showing approximately $100,000 income annually, which he argues he can pay as annual restitution if the Court sentences him to home confinement. Defendant made that income at least in part because defendant did not pay any shipping costs – if defendant actually had to pay shipping costs, it is doubtful that he would make $100,000 a year, and he likely would not be in a position to pay the annual restitution that he proposes. Regardless of whether he can pay, the government stands by its request for a sentence that includes incarceration, made even stronger by the information in this Supplemental Sentencing Memorandum.

Chicago. Defendant shipped these checks to Freight Company A at their address on Network Place in Chicago. *Id*., page 4.

Freight Company A deposited the checks in its subsidiary's bank account. On June 23, 2021, each of the checks was returned, unpaid, to Freight Company A's subsidiary's bank, as "Unable to Locate Account." *See* Exhibit 34. The routing and account numbers referenced on the bank statements for the return of the three checks match those on the three checks tendered by defendant to Freight Company A. These checks were returned not due to insufficient funds, but were returned because the checking account printed on the checks did not exist.

On or about August 13, 2021, the government served a subpoena on PNC Bank for records relating to account number 898461020, the same account number printed on each of the three checks tendered by E Distribution to Freight Company A. The bank responded that no such records exist. *See* Exhibit 48.

   2. *The Fake Bank Account*

Freight Company A continued to provide shipping services and send statements to E Distribution aka A Distribution for payment. On or about September 22, 2021, defendant, using the alias Mark Ross and the email edistributioncorp@gmail.com, communicated with Freight Company A about payments on the statements sent to E Distribution. Mark Ross, aka Yale Schiff, provided bank account information to be used for payment of 160 outstanding invoices listed in the email, specifically a routing

6

number of 071025661 (correlating to BMO Haris as the bank),and an account number of 7197641201. *See* Exhibit 49.[3]

Freight Company A charged the outstanding listed invoices, which totaled $477,785.66, to the BMO Harris bank account identified by defendant for payment, as per defendant's instructions. On October 5, 2021, the bank denied the payment because, as described on Freight Company A's subsidiary's bank statement, the bank was "unable to locate checking [account]." The bank statement identified the rejected routing number of 071025661 and the missing account as number 7197641201, the same as set forth in defendant's email. *See* Exhibit 34 (first highlighted transaction). Once again, the payment was rejected not due to insufficient funds, but due to the account being nonexistent.

On August 30, 2022, the government served a subpoena on BMO Haris for information on the bank account provided by defendant to Freight Company A in the September 21, 2021 email. The subpoena requested account information associated with the ACH transfer of $477,785.66 attempted on October 5, 2021, specifically for the routing number of 071025661 and account number of 7197641201, as identified by defendant in his email. The bank confirmed that no such account existed. *See* Exhibits 34A and 34B.

---

[3] Despite using his alias, it was defendant who sent the September 22, 2021 email with the fake banking information to Freight Company A. The sender uses the name Mark Ross, which defendant used to communicate with Freight Company A. *See* Exhibit 46, an email from Marc R. The subscriber information for the email address shows that it was created on July 19, 2021, in the name of Mark Ross. *See* Exhibit 50. The email itself communicates about payment of statements sent to defendant's company, a company that defendant admitted he is the sole person in charge.

### 3. *Fake Delivery of Payments*

In a further effort to head off Freight Company A from shutting down his account, on or about August 16, 2021, defendant also claimed to send payment checks to Freight Company A as payment on his account, and provided tracking information to Freight Company A for those checks. *See* Exhibits 33, 51. Defendant knew from the Freight Company A statements that payments should be sent to Freight Company A at its address on Network Place, and that is the address where defendant sent his prior checks. *See* Exhibit 47. However, on August 16, 2021, defendant sent a package purporting to be checks to Freight Company A not at its Network Place address, but to a FedEx Office located at 875 W. Division, Chicago. *See* Exhibit 51. That address is not and never has been associated with Freight Company A. Documents indicate that the package was picked up by "W.Cole," but nobody of that name is known to Freight Company A. Moreover, Freight Company A would not direct a payment to a FedEx Office, but would direct it to Freight Company A. Defendant's false tracking information was used to lull Freight Company A into believing that the payment checks were lost in transit, when defendant had not sent payment to Freight Company A.

Defendant's fraud on Freight Company A was premeditated and calculated. It is shocking that he would engage in such conduct while on Pretrial Release. Moreover, once again, defendant did not commit the fraud out of financial need. During the time that defendant spent so much effort to avoid paying Freight Company A, providing Freight Company A with doctored bank checks, false bank information, and fake

8

FedEx shipment information for payments, defendant's company was making plenty of money to pay Freight Company A. Rather than paying his bills, defendant chose to use the money from his Synergy account directly for personal goods and services, including hundreds of thousands of dollars in payments for credit cards. *See* page 32 of the Government's Sentencing Memorandum, *citing* Exhibit 31. On October 5, 2021, the same day that defendant's purported payment to Freight Company A was rejected as "account not found," defendant paid $75,067 out of his Synergy account for his new BMW. *Id*. Defendant did not use any the money of Synergy to pay money owed to Freight Company A.

Despite the fitting use of the word "brazen" to describe defendant's offense conduct and his fraud during Pretrial Release, and other conduct addressed in the Government's Sentencing Memorandum, absolutely nothing in this case is more brazen than defendant causing his defense counsel to represent to this Court in his sentencing memorandum and at the sentencing hearing that he did not commit fraud on Freight Company A, and that Freight Company A was "extorting" him.[4] This supplemental memorandum and exhibits are sufficient to show that Yale Schiff is not a changed man ─ he committed calculated, planned fraud while on Pretrial Release and tried to deceive the Court about it. This fraud, not accounted for in his guidelines,

---

[4] During the sentencing recess, defendant also caused his defense counsel to suggest to the government to investigate if the false bank information was provided by the owner of the warehouse. This does not even make sense, just as defendant's extortion explanation made no sense, but it is not the first time he attempted to deflect his wrongdoing on to his landlord. The government can make available a recorded call with the landlord and a collection agent in which the landlord appears genuinely surprised that he appears as a name involved in defendant's business, explaining that he is merely the landlord.

is additional supports for a sentence of 78 months' imprisonment as sufficient but not higher than necessary.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court sentence defendant to 78 months' imprisonment.

                                              Respectfully submitted,

                                              MORRIS PASQUAL
                                              Acting United States Attorney

By:   */s/ Sheri H. Mecklenburg*
       SHERI H. MECKLENBURG
       Assistant United States Attorney
       219 South Dearborn Street
       Chicago, Illinois 60604
       (312) 353-5300

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YALE SCHIFF | No. 19 CR 474-1<br><br>Judge Mary M. Rowland |

**GOVERNMENT'S SUPPLEMENTAL EXHIBITS TO
GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM
REGARDING YALE SCHIFF'S FRAUD WHILE ON PRETRIAL RELEASE**

| Exhibit No. | Exhibit Description |
|---|---|
| 41 | Defense waiver of hearing on fraud against Freight Company A |
| 42 | FedEx Customer Summary for Mark Schiff |
| 43 | Photo of Schiff shipping label with phone number |
| 44 | Phone subscriber records from Ad Hoc Labs aka Burner |
| 45 | E-Distribution email from Marc R. using 7678 number |
| 46 | E-Distribution Account Opening with Freight Company A |
| 47 | Three Checks from E Distribution and Shipping label |
| 48 | Subpoena to PNC Bank and response |
| 49 | Email from Mrk Ross to Freight Company A with banking information for payment |
| 50 | Subscriber information for edistributioncorp@gmail.com |
| 51 | 8.16.2021 Tracking information for checks from Synergy Sales to Freight Company A |